**No. 23-16010**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**In re TESLA, INC., SECURITIES LITIGATION**

---

GLEN LITTLETON, Lead Plaintiff,

*Plaintiff-Appellant*

v.

ELON MUSK, TESLA, INC., BRAD W. BUSS,
ROBYN DENHOLM, IRA EHRENPREIS,
ANTONIO J. GRACIAS, JAMES MURDOCH,
KIMBAL MUSK, and LINDA JOHNSON RICE,

*Defendants-Appellees*,

---

Appeal from United States District Court
for the Northern District of California
Civil Case No. 3:18-cv-04865-EMC
Hon. Edward M. Chen

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

---

Nicholas I. Porritt
Levi & Korsinsky, LLP
1101 Vermont Avenue NW,
Suite 700
Washington, DC 20005
Tel: (202) 524-4290
Fax: (212) 363-7171

Adam M. Apton
Adam C. McCall
Levi & Korsinsky, LLP
1160 Battery Street East,
Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
Fax: (212) 363-7171

*Attorneys for Plaintiff-Appellant Glen Littleton*

# TABLE OF CONTENTS

INTRODUCTION. ...................................................................1

I. THE DISTRICT COURT'S ERRONEOUS JURY INSTRUCTIONS
REQUIRE REVERSAL. .........................................................2

   A. Plaintiff Preserved the Jury Instruction Issue. ...........................3

   B. The Court's Instructions Were Improper. ...................................7

   C. The Court's Instructional Error Was Not Harmless. .................10

II. THE DISTRICT COURT WRONGLY DENIED PLAINTIFF'S
MOTION FOR JUDGMENT AS A MATTER OF LAW......................23

   A. Judgment in Favor of Plaintiff on Materiality is Procedurally
   Proper..................................................................................23

   B. Judgment on the Issue of Materiality Should Have Been
   Entered in Favor of Plaintiff.............................................25

CONCLUSION ...................................................................35

CERTIFICATE OF SERVICE..................................................37

# TABLE OF AUTHORITIES

## Cases

*Balmier v. State Farm Mut. Auto. Ins. Co.*,
  493 F.2d 130 (9th Cir. 1974) ............................................................... 7

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................... 19, 35

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ............................................................ 15

*Caballero v. City of Concord*,
  956 F.2d 204 (9th Cir. 1992) ........................................................ 10, 20

*Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*,
  498 F.2d 1137 (9th Cir. 1974) .......................................................... 25

*EEOC v. Go Daddy Software, Inc.*,
  581 F.3d 951 (9th Cir. 2009) ............................................................ 23

*Equate Media, Inc. v. Sutra*,
  2023 WL 7297328 (9th Cir. Nov. 6, 2023) ............................................ 7

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ............................................................ 14

*Erickson v. Pierce Cnty.*,
  960 F.2d 801 (9th Cir.1992) ............................................................. 25

*Fruend v. Nycomed Amersham*,
  347 F.3d 752 (9th Cir. 2003) ........................................................ 23, 24

*Gantt v. City of Los Angeles*,
  717 F.3d 702 (9th Cir. 2013) ......................................................... 9, 14

*Gebhardt v. SEC*,
  595 F.3d 1034 (9th Cir. 2010) ............................................................ 8

*Gulliford v. Pierce County*,
   136 F.3d 1345 (9th Cir. 1998) ............................................................. 6

*Hunter v. County of Sacramento*,
   652 F.3d 1225 (9th Cir. 2011) ............................................ 10, 11, 14, 19

*Lakeside-Scott v. Multnomah Cnty.*,
   556 F.3d 797 (9th Cir. 2009) ......................................................... 25, 35

*McCabe v. Ernst & Young, LLP*,
   494 F.3d 418 (3d Cir.2007) ................................................................ 15

*McCord v. Maguire*,
   873 F.2d 1271 (9th Cir. 1989) .......................................................... 6, 7

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ..................................................... 14, 19

*Newton v. Equilon Enters., LLC*,
   411 F. Supp. 3d 856 (N.D. Cal. 2019) ................................................ 7

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
   730 F.3d 1111 (9th Cir. 2013) ............................................................ 15

*Peralta v. Dillard*,
   744 F.3d 1076 (9th Cir. 2014) .......................................................... 25

*SEC v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) ............................................................. 7

*Swinton v. Potomac Corp.*,
   270 F.3d 794 (9th Cir. 2001) ......................................................... 8, 10

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
   274 F.3d 1276 (9th Cir. 2001) ............................................................. 7

**Statutes**

Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b)..................................1

**Rules**

SEC Rule 10b-5, 17 C.F.R. § 140.10b-5 ............................................1

Fed. R. Civ. P. 50(b)........................................................23, 24, 25, 35

Fed. R. Civ. P. 51 ...........................................................................4

Fed. R. Civ. P. 56(a) .....................................................................24

**INTRODUCTION.**

In its jury instructions, the District Court committed a fundamental error of law by requiring Plaintiff to prove that Defendant Elon Musk not only acted with deliberate recklessness when making false statements about a potential go-private transaction for Tesla, Inc. on August 7, 2018, but also that Plaintiff had to prove Musk acted knowingly. This double requirement is contrary to the well-settled law of this Circuit. Defendants' attempt to defend the instruction are unavailing as the misstatement of the law (or, at a minimum its confusion) is facially apparent and its prejudice self-evident considering the centrality of the issue of scienter to securities fraud claims. Further, as Plaintiff had either been awarded summary judgment or presented substantial evidence on every other element of his claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 140.10b-5, the instructional error was not harmless. This error alone requires a new trial.

In addition, the District Court committed reversible error by denying Plaintiff's motions under Rules 50(a) and 50(b) for judgment as a matter of law on the elements of materiality and reliance. Rule 50

permits parties to move for judgment as a matter of law on any element or issue presented by their claim and based on the evidence presented at trial, no reasonable jury could have found that Musk's false statements on August 7, 2018 that funding was "secured" and "investor support is confirmed" for a $60 billion go-private transaction of Tesla were not material or relied on by Tesla investors. Defendants' identification of unsubstantial scraps of evidence and assertions of unsupported speculations are insufficient to rebut the mass of evidence and testimony, including unrebutted expert analysis and opinion, establishing these elements.

Accordingly, the District Court's Judgment should be reversed and this action remanded for a new trial.

## I. THE DISTRICT COURT'S ERRONEOUS JURY INSTRUCTIONS REQUIRE REVERSAL.

Defendants put forth three principal arguments as it relates to the District Court's erroneous jury instruction: (1) Plaintiff failed to preserve his claim of instructional error; (2) the jury instruction was proper; (3) in the event of an improper instruction, such error was harmless. All three arguments fail as a matter of law.

### A.    Plaintiff Preserved the Jury Instruction Issue.

Defendants are incorrect—Plaintiff properly preserved the jury instruction issue. On multiple occasions, Plaintiff objected to the Court's proposed jury instruction—namely the requirement imposed by the Court to have Plaintiff prove Musk's state of mind, and, specifically, to prove he acted knowingly, despite the District Court having previously determined that Musk's recklessness satisfied the scienter element of Plaintiff's claim. In their brief, Defendants mischaracterize Plaintiff's argument. The issue not only turns on the last sentence of the jury instruction, but it also concerns the District Court's insistence on requiring Plaintiff to prove Musk's state of mind after already found scienter at summary judgment.

The district court granted Plaintiff's summary judgment motion as it related to the element of scienter, thereby eliminating Plaintiff's burden to prove Musk's state of mind at trial. With this in mind, Plaintiff's proposed jury instruction, filed on September 9, 2022, as it relates to scienter stated, *inter alia*, that the District Court has already determined prior to this trial that the evidence in this case demonstrated conclusively as a matter of law that statements were made "with

deliberate recklessness as to its truth or falsity." Defendants' proposed jury instruction did not include any instruction concerning the District Court's prior disposition of the scienter issue.

Later, the parties discussed the curative instruction given by the District Court during trial, namely the court's requirement for the jury to still "decide whether Mr. Musk acted knowingly." *See* Pl.'s Br. at 31-32. The District Court's insistence on including the final line is a critical issue that tracks the other issues in the instructions the court ultimately gave to the jury. Whether prior to closing arguments or during trial, the issue remained—the trail court still required Plaintiff to prove Musk's state of mind, even though that was no longer at issue following summary judgment.

Plaintiff's proposed jury instruction, along with Plaintiff's subsequent argument concerning the court's curative instruction, were sufficient to preserve the issue on appeal. Federal Rule of Civil Procedure 51 is instructive on this issue. The rule provides, in pertinent part that "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to

consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

Here, the record demonstrates that Plaintiff properly raised the instruction issues well before, and during, trial. First, Plaintiff put forth its proposed jury instruction in September 2022, conferred with Defendants' counsel about the difference in proposed instructions, and submitted the disagreement to the District Court. Plaintiff then went further by informing the District Court of its issues with the court's final instruction on multiple occasions. On the third day of trial, Plaintiff's counsel requested that a cautionary instruction be given to the jury on this issue—namely that the jury would need to make findings as to Musk's state of mind. Plaintiff further filed an emergency motion requesting a cautionary instruction arguing that given the testimony elicited by Defendants, the District Court should have informed the jury of the prior summary judgment ruling. *See* 7-ER-1453. Ultimately, the District Court declined, giving the jury a cautionary instruction that ran contrary to what Plaintiff requested.

Finally, Plaintiff explicitly objected to the final instructions in writing on January 31, 2023, 7-ER-1468-73, the day before final

instructions were given to the jury and three days before the jury retired to consider its verdict. These separate objections alone would have been enough under Rule 51 to preserve his objections but, when taken in full, Plaintiff's actions were sufficient to demonstrate his concern over the jury instructions currently at issue and communicate it to the District Court in timely fashion. *See also Gulliford v. Pierce County*, 136 F.3d 1345, 1348 (9th Cir. 1998) (objection preserved "when (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction.") (internal citations omitted). Despite Plaintiff's explicit objections, the District Court instructed the jury, twice addressing the issue of scienter, backtracking on its prior summary judgment ruling in the process.

This issue is not settled, or even governed, by *McCord v. Maguire*, 873 F.2d 1271 (9th Cir. 1989), *amended on other grounds by* 885 F.2d 650 (9th Cir. 1989). *McCord* did not even concern the issue of a potentially erroneous jury instruction or claims under the securities laws. Indeed, the cases cited by Defendants on this point are inapposite and certainly are not dispositive of this appeal. None deals with the issue of an

erroneous jury instruction and they otherwise merely address the sufficiency of evidence presented in their particular cases to the particular facts at issue.[1] Plaintiff has preserved its objections to the District Court's jury instructions and, as set forth below, Plaintiff was not required to move under Rule 50(b) on every element of its claim to preserve certain issues on appeal.

### B.    The Court's Instructions Were Improper.

Defendant's arguments that the District Court's instructions on scienter were proper miss the mark. The District Court's instructions concerning scienter imposed an additional burden on Plaintiff to prove Musk's knowledge, after Musk's recklessness had already been

---

[1] *See McCord*, 873 F.2d 1271 (medical negligence case dealing with general versus specific verdicts); *Balmier v. State Farm Mut. Auto. Ins. Co.*, 493 F.2d 130 (9th Cir. 1974) (discussing insurance coverage claim); *Equate Media, Inc. v. Sutra*, 2023 WL 7297328, at *1 (9th Cir. Nov. 6, 2023) (discussing trade secrets claim in employment context); *Newton v. Equilon Enters., LLC*, 411 F. Supp. 3d 856 (N.D. Cal. 2019) (discussing wrongful termination claim); *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001) (employment discrimination and retaliation claim). The only case that concerns a securities fraud claim, *SEC v. Todd*, actually supports Plaintiff by noting that certain financial information is self-evidently material under the securities laws. 642 F.3d 1207, 1221 (9th Cir. 2011). Similarly, statements about secured funding and confirmed investor support for a $60 billion transaction are unquestionably material.

determined. All parties agree that the proper instruction for scienter in a Rule 10b-5 case requires a plaintiff to demonstrate either recklessness *or* knowledge. *See Gebhardt v. SEC*, 595 F.3d 1034, 1041 (9th Cir. 2010) (allowing a party to satisfy the scienter element by showing a defendant acted knowingly or recklessly). Here, not only did the District Court impose an additional burden on Plaintiff by requiring proof of Musk's knowledge, but it also did so after already determining that the scienter element had already been satisfied during summary judgment. For both reasons, the instructions were improper.

*First*, Defendants contend that when read in full, any confusion caused by the District Court's instruction would be alleviated. Defendants' reliance on *Swinton v. Potomac Corp.* is inappropriate in this matter. In *Swinton*, a party to an employment action argued that a statement contained within an instruction on corporate liability did not fully state the applicable law for employer liability in harassment actions. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 807 (9th Cir. 2001). The *Swinton* Court disagreed, asserting that when reading the entire instruction in full, they fairly covered the law governing employer liability. *See id*.

*Swinton* is simply inapplicable here. First, unlike in *Swinton*, the District Court's inclusion of the statement requiring Plaintiff to prove knowledge was not a full restatement of the law on scienter. Rather, the inclusion of the statement directly contradicted Ninth Circuit authority on scienter. In jury instruction 9, the inclusion of the final statement: "[b]ut you must still decide whether Mr. Musk acted knowingly" introduced a mandatory instruction for the jury. The use of the word "must" would direct a reasonable juror to understand that, to find that Plaintiff has proven the element of scienter, the juror would have to find that Musk acted knowingly when making the statements. *See* 1-ER-48. But that is not what is required for scienter. Moreover, the District Court had already found Plaintiff met the scienter element in determining that Musk acted with reckless disregard in making the false statements.

The present case is more akin to *Gantt v. City of Los Angeles*, 717 F.3d 702 (9th Cir. 2013), where this Court determined that jury instructions related to a party's state of mind that cause confusion were improper. Defendants only contrast *Gantt* in their brief to note that the case does not discuss the "knowing" or "reckless disregard" standard required in a 10b-5. Instead of pointing this Court to authority that

reviewed the scienter standard, Defendants proceed to rely on an employment case, *Swinton*, that has little to do with a party's state of mind.

The District Court's instruction on scienter was clear and unambiguous. It was also clearly erroneous. Accordingly, reversal is necessary given this error.

### C. The Court's Instructional Error Was Not Harmless.

Scienter is a critical issue in a Rule 10b-5 securities class action. This Court has made clear that "[j]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (internal citations omitted). "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Caballero v. City of Concord*, 956 F.2d 204, 206-07 (9th Cir. 1992) "While this standard of review is less stringent than review for harmless error in a criminal case, it is more stringent than review for sufficiency of the evidence, in which we view the evidence in the light most favorable to the prevailing party." *Id*.

As the *Hunter* Court observed: "We presume prejudice where civil trial error is concerned and the burden shifts to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Hunter*, 652 F.3d at 1235 (internal quotations omitted). Defendants have failed to meet that burden here.

Defendants make three arguments that the jury instruction on scienter was harmless. *First*, Defendants' argue that instructional error was harmless because they avoided the scienter issue during closing argument. This argument fails for two reasons: (1) Defendants repeatedly argued that Musk's state of mind was not fraudulent, putting the issue into contention; and (2) the District Court's instruction made scienter an issue even if Defendants did not heavily rely on the argument.

To the first point, during closing arguments Defendants' counsel consistently referred to Musk's state of mind. Indeed, he argued that "That's what this whole case is about", 4-ER-672, and concluded by arguing Musk "didn't intend to deceive anybody." 4-ER-718. Throughout closing argument, Musk's state of mind and intent was raised repeatedly:

- "Every day from that day forward he showed his genuine intentions." (4-ER-658);

- "in that moment, Mr. Musk did not form some intention to deceive . . . ." (4-ER-667);

- reference to Mr. Musk's "fog of war" and that he was "tweeting what he's thinking" (4-ER-670);

- "he doesn't think ahead of time in that rushed moment that this could be interpreted differently than [sic] what it means to him…. That's what this whole case is about." (4-ER-672);

- "it was unmistakably true in his mind" (4-ER-679);

- "Funding is secured in my mind. Investors are supportive and it's confirmed to me. His mind." (4-ER-680);

- Plaintiffs "had the burden on every single element" including scienter (4-ER-711); and

- "And what motive does anybody have, what illicit intention…?" (4-ER-717).

By calling Musk's state of mind into question, Defendants did not have to directly address the scienter instruction to suggest to the jury that Musk's state of mind was at issue. In addition, by making the

instruction, over Plaintiff's objection, the District Court made Musk's state of mind an issue the jury should consider, thereby effectively mooting its prior summary judgment order.

*Second*, Defendants argue that there was "no reasonable likelihood of confusion" resulting from the District Court's instructions. The erroneous instruction on scienter, however, can only have caused substantial confusion for the jury. Defendants and Plaintiff agree that Ninth Circuit law and the model jury instructions allow for a finding of scienter based on recklessness or knowledge. Here, however, the District Court required the jury to find knowledge on Musk's part, despite its prior ruling finding recklessness, and thereby placing an issue before the jury that had already been decided and misstating the burden Plaintiff had to meet. While Defendants argue that the District Court's instruction cured any issue, it did quite the opposite. The apparent backtrack from its determination that scienter had been met based on a finding of recklessness created an inherent confusion that a reasonable juror would maintain. As a result, this case tracks that of *Gantt* and *Erickson*, both cases where the trial court created confusion about a party's state of mind through its instruction to the jury. *See generally Gantt*, 717 F.3d at 708

(9th Cir. 2013); *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 834–35 (9th Cir. 2019).

*Third*, Defendants argue that any instructional error on scienter was harmless because Plaintiff failed to prove the other elements of the 10b-5 claim. This argument, however, is premised on mere speculation and misrepresentation of the record. Defendants have the burden to show "that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Hunter*, 652 F.3d at 1235. Ultimately, the jury's verdict was a general verdict and did not outline the specific reasons jurors found against Plaintiff. 1-ER-28. Therefore, for Defendants to meet their burden to demonstrate harmless error, they have to show that Plaintiff presented "little or no evidence establishing a necessary element" of his Rule 10b-5 claims. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1065 (9th Cir. 2008). Defendants fail to do this.

### i. Plaintiff Presented Substantial Evidence Establishing Loss Causation.

Defendants argue that "the jury could reach no other conclusion than that [Plaintiff] failed to prove loss causation." Def. Br. at 43. The argument is absurd. The ***only*** evidence on loss causation presented at

trial was presented by Plaintiff and was sufficient to show that Musk's fraudulent August 7, 2018 tweets played a substantial part in causing the losses sustained by Plaintiff and the Class when Tesla's stock price declined. This is sufficient to meet Plaintiff's burden on this element of a Rule 10b-5 claim. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013) ("[t]ypically, 'to satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff.'") (quoting *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir.2007)). Plaintiff is not required to show that the misrepresentations or omissions were the "sole reason for the investment's decline in value." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). Thus, "other contributing forces will not bar recovery under the loss causation requirement." *Id*.

Plaintiff's expert, Dr. Michael Hartzmark, presented uncontroverted evidence that Tesla's stock price increased by a statistically significant amount after both the "funding secured" tweet at 9:48 a.m. on August 7, 2018 and the "investor support is confirmed" tweet

at 12:36 p.m. on August 7, 2018. 3-ER-490-93; 6-ER-1296. Prices of other Tesla securities also reacted instantaneously to the tweets. 3-ER-476-85; 6-ER-1271; 6-ER-1273. Dr. Hartzmark also undertook a painstaking qualitative review of media and analyst coverage following the August 7, 2018 tweets which confirmed that "funding secured" and "investor support is confirmed" substantially contributed to the increase in Tesla's stock price on August 7, 2018 and to its subsequent decline to August 17, 2018. 3-ER-502-06; 3-ER-513-14. Dr. Hartzmark concluded: "I've gone through and looked at these dates, looked at the movements in implied volatility and prices, it would suggest that, you know, that 'investor support confirmed' and 'funding secured' are very important pieces of information." 3-ER-536.

Dr. Hartzmark also testified that the falsity of the August 7, 2018 statements "funding secured" and "investor support is confirmed" was not incorporated into the price of Tesla stock and other securities until August 17, 2018 and that the decline in Tesla's stock price from August 7 to August 17, 2018 was statistically significant and caused by those false statements. 3-ER-535-37; 3-ER-561-63. Indeed, Dr. Hartzmark reviewed over 2400 news items concerning Tesla during this period and

concluded that there was no information that caused the movements in Tesla's securities prices other than the false statements "funding secured" and "investor support is confirmed". 3-ER-538-39.

Accordingly, it is simply untrue for Defendants to assert that "Plaintiff did not attempt to offer the statistical evidence necessary to prove the alleged misstatements caused Tesla's stock price to increase or that the purported revelation of their falsity caused Tesla's stock price to decrease." Def. Br. at 44. Dr. Hartzmark offered lengthy testimony on exactly this point and also complemented his quantitative analysis with a qualitative analysis as required under well-accepted financial techniques. 3-ER-535-37; 3-ER-556-58; 3-ER 573-75. Dr. Hartzmark conducted a painstaking review of all the information published about Tesla during the Class Period and concluded that "there was no other, what is called, confounding information, so I concluded that 66.67 [the Tesla-specific drop from August 7 to August 17, 2018] was the amount caused by the Tesla tweets, the loss caused by the Tesla tweets." 3-ER-538-39. The depth of this work is shown in Dr. Hartzmark's demonstrative exhibits which contain both detailed statistical charts as

well as selected portions of the lengthy record that he reviewed and considered in reaching his opinions. 6-ER-1278-309.[2]

Other statements about Dr. Hartzmark's testimony in Defendants' briefs are easily exposed as falsehoods. Defendants state that Dr. Hartzmark did not "isolate the price impact of the alleged fraud during the Class Period from other market and industry factors." Def. Br. at 45. Yet Dr. Hartzmark did exactly that, conducting an event study that acted to "remove outside influences, such as general market behavior" from the Tesla stock movements he analyzed. 3-ER-498; 3-ER-538. Similarly, Defendants assert that "any alleged loss was simply the result of 'non-statistically significant' stock movements. Def. Br. at 45. But Dr. Hartzmark testified that his analysis showed both the price increases on August 7, 2018 and the price decline from August 7, 2018 to August 17, 2018 to be statistically significant. 3-ER-499; 3-ER-543.

---

[2] Defendants focus on the period from August 7 to August 13, 2018 and stress that the decline during that period was not statistically significant. Def. Br. at 46. But this approach is misguided under the factual circumstances presented in this case, where truth was revealed about the falsity of Musk's August 7, 2018 tweets over the entire course of the Class Period and where the decline over the entire Class Period is statistically significant. 3-ER-375-76. As Dr. Hartzmark explained, if the corrective information had been revealed at one time, the stock price decline would have been statistically significant. *Id.*

Thus, there was more than sufficient evidence presented by Plaintiff to meet his burden to prove loss causation. Defendants have utterly failed to show that there was "little or no evidence establishing a necessary element" of his Rule 10b-5 claims as required under *Nationwide*, 523 F.3d at 1065. Accordingly, Defendants do not meet their burden "that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Hunter*, 652 F.3d at 1235. Defendants have not shown that the erroneous jury instruction on scienter was harmless.

### ii. Plaintiff Presented Substantial Evidence Establishing Reliance.

Defendants also argue that it is more probable than not that the jury would have reached the same verdict on the issue of reliance. Def. Br. at 46. But Defendants concede that Plaintiff had established the rebuttable presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 249 (1988). *See* Def. Br. at 46. Defendants then argue that there was "ample evidence from which it could conclude that Defendants rebutted the fraud-on-the-market presumption". *Id*. But this is not sufficient to prove "that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Hunter*, 652 F.3d at

1235. Arguing that *Defendants* presented *sufficient* evidence to rebut a presumption of reliance is not the same as establishing that *Plaintiff* presented *little or no evidence* to meet its burden to establish the presumption in the first place. Mere sufficiency of evidence is not enough to satisfy a party's burden to show an erroneous jury instruction was harmless. *See Caballero*, 956 F.2d at 206-07 ("While this standard of review is less stringent than review for harmless error in a criminal case, it is more stringent than review for sufficiency of the evidence, in which we view the evidence in the light most favorable to the prevailing party.").

In any event, as set forth in more detail in Plaintiff's Opening Brief, the evidence in support of the materiality of the false August 7, 2018 statements "funding secured" and "investor support is confirmed" is overwhelming and Defendants "evidence" rebutting the materiality of the August 7, 2018 false statements is flimsy at best. As Dr. Hartzmark testified, there were immediate and statistically significant price increases following Musk's tweets and an analysis of over 2400 news and financial analyst reports in the ten days following confirms that the market was interested in "funding secured" and "investor support is confirmed". 3-ER-501-06. "Funding secured" was also the focus of the

SEC as early as the afternoon of August 7, 2018. 2-ER-342-43; 5-ER-1052.

In response, Defendants point to the purported testimony of Professor Stephen Heston "that there would have been the 'exact same' market reaction had Musk simply tweeted that he was considering taking Tesla private." Def. Br. at 46-47. This is a further distortion and misrepresentation of the record by Defendants. Professor Heston, who expressly offered no opinion on the materiality on any statement made by Musk during the Class Period, carefully qualified his response by stating "if the market believed the information". 3-ER-486. Thus, Professor Heston merely opined that if the market regarded the two statements as equivalent, then it would react the same way. Professor Heston offered no opinion whether his analysis showed the market, in fact, considered the two statements as identical. The unrebutted testimony from Dr. Hartzmark, who did provide an opinion regarding materiality, is that the market did not treat the statements as equivalent, that the market was already aware of Musk's intention to take Tesla private, and that "funding secured" was the material

information disclosed by the August 7, 2018 tweet. 3-ER-513-14; 3-ER-535-39; 3-ER-556-58; 3-ER-573-75; 4-ER-768.

Defendants' reliance on Tesla's stock price reaction after the August 13, 2018 blogpost is similarly ineffective. Unlike at summary judgment, Defendants presented no expert evidence regarding the reaction of Tesla's stock price to the August 13, 2018 blogpost. There was no evidence in the record that any price reaction on August 13, 2018 was statistically significant or meaningful in any way. Even after the August 13, 2018 blogpost, analysts still regarded the confirmation of investor support given by Musk on August 7, 2018 as important, material information that was subsequently revealed to be completely false. 3-ER-526-28; 5-ER-1057. As Dr. Hartzmark explained, his analysis of the implied volatility for Tesla stock options as well as ongoing discussion regarding investor support and funding for a go-private transaction after August 13, 2018 shows that investors and the market were still being misled by the August 7, 2018 tweets. 3-ER-526-27; 3-ER-561-63. The misleading effect of Musk's August 7, 2018 tweets was not removed from Tesla security prices until August 17, 2018, after the *New York Times* article. 3-ER-536-37; 6-ER-1141-52; 4-ER-753.

Therefore, Defendants have failed to show that it was probable the jury would have returned the same verdict based on reliance. Given the prejudicial nature of the District Court's instructional error, reversal is warranted and a new trial should be granted.

## II. THE DISTRICT COURT WRONGLY DENIED PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW.

### A. Judgment in Favor of Plaintiff on Materiality is Procedurally Proper.

Defendants contend that Plaintiff's motion for judgment as a matter of law was procedurally flawed for failing to move on all elements of the securities claim. Defendants are wrong. There is no requirement to move for judgment on all elements of a claim under Fed. R. Civ. P. 50(b). *See EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009) (discussing a party's decision to move for judgment as a matter of law on two elements of its retaliation claim); *see also Fruend v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (discussing a party's attempt to move for judgment as a matter of law on a single element of its claim and reversing on other grounds).

The language of Rule 50 as well as the related Rules 56 and 59, confirm this conclusion. Rule 50(a)(1) states repeatedly that a party may

move "on an issue". Rule 50(b) permits a renewed motion for judgment as a matter of law post-verdict. The rule makes clear that a party may move for judgment on a single legal issue, not necessarily on a complete legal claim. This language tracks Rule 56, which allows a party to seek summary judgment on all or part of a claim. *See* Fed. R. Civ. P. 56(a). Thus, Plaintiff may move for judgment in his favor on the elements of materiality and reliance without moving on the remaining issues: loss causation and damages.

This Court's only requirement when bringing a motion under Rule 50(b) is that a party cannot raise new arguments that it did not raise in its pre-verdict Rule 50(a) motion. *See Fruend*, 347 F.3d at 761. Plaintiff complied with this requirement, asking for judgment on materiality and reliance and a new trial ordered on any remaining elements Defendants dispute. 1-ER-9-10. Plaintiff did not move, nor did it need to, on the remaining elements of the Rule 10b-5 claim, like loss causation and, on appeal, judgment may still be entered on the elements subject to the motion.

24

**B.    Judgment on the Issue of Materiality Should Have Been Entered in Favor of Plaintiff.**

A Rule 50(b) motion should be granted unless "there is *substantial* evidence present that could support a finding, by reasonable jurors, for the nonmoving party." *Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974) (emphasis added). "It is error to deny a judgment [as a matter of law] when it is clear that the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party." *Erickson v. Pierce Cnty.,* 960 F.2d 801, 804 (9th Cir.1992). Thus, the Court should enter judgment as a matter of law when the evidence presented at trial permits "only one reasonable conclusion," *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014), and "the conclusion is contrary to that reached by the jury." *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (internal quotation marks and citation omitted). Judgment as a matter of law is also "appropriate when the jury could have relied only on **speculation** to reach its verdict." *Id.* at 803 (emphasis added). The existence of a "mere scintilla" of evidence "is not enough to sustain a verdict." *Id.* at 802.

At trial, Plaintiff presented overwhelming evidence that Musk's August 7, 2018 tweets stating "funding secured" and "investor support

25

is confirmed" were material, *i. e.*, important to reasonable investors, and materially false. *See* Pf. Opening Brief at 38-64.

### i. "Funding secured" was material.

Plaintiff presented evidence from Musk himself that the statement "funding secured" was material, that he intended to investors to both read it together with the statement "am considering taking Tesla private at $420" and to rely on it. 2-ER-329; 2-ER-334-37; Musk further testified that he expected Tesla's stock price to increase following the tweet. 2-ER-337. During the Class Period, investors and analysts placed primary importance on the words "funding secured" even investors who understood sufficient capital was "available" to fund taking Tesla private. 2-ER-269; 2-ER-279-81; 2-ER-289; 2-ER-379; 2-ER-389-91; 2-ER-394; 4-ER-738; 4-ER-777; 4-ER-807; 4-ER-812; 4-ER-814; 6-ER-1122-26; 6-ER-1339-40.

After the "funding secured" tweet, NASDAQ halted trading in Tesla stock and the SEC began investigating Musk's use of the term. 3-ER-497-98. On the afternoon of August 7, 2018, Tesla's CFO, Deepak Ahuja emailed Musk stating: "We are getting a lot of enquiries from

investors, SEC and the media to better understand the comment 'Funding secured.'" 5-ER-1052.

In addition to this contemporaneous evidence of materiality, Plaintiff presented unrebutted expert testimony that the "funding secured" statement made on August 7, 2018 was material. Following the tweet, he observed an "immediate[] . . . spike in volume" and "spike in the price." 3-ER-491. He testified that he performed a statistical study referred to as a "regression" analysis and confirmed with 95% confidence that Tesla's stock price moved in response to the tweet (and not from unrelated market factors). 3-ER-498-99.

Qualitatively, Dr. Hartzmark reviewed over 2400 news reports as well as internal emails and analyst reports and emails. 3-ER-502-06. He concluded: "there is substantial qualitative evidence which would suggest that the 'funding secured' is material to the market." 3-ER-513-14. Notably, the qualitative evidence considered by Dr. Hartzmark included evidence that Mr. Musk's interest in taking Tesla private was already publicly known by August 2018 and that any go-private transaction would involve a premium on Tesla's then-market price. 3-ER-556-58; 3-ER-573-75; 4-ER-768. This qualitative analysis enabled

Dr. Hartzmark to identify "funding secured" as the material information in Mr. Musk's first August 7, 2018 tweet. 3-ER-535-36.

Further the statement was materially false; there was never any funding "secured". There was never any commitment from the Saudi Arabia Public Investment Fund to fund a going-private transaction of Tesla. As the texts from Yasir al-Rumayyan reveal, at most, there was an expression of interest in exploring a potential transaction. 4-ER-797-801. Most tellingly, Musk's advisors, Silver Lake Partners and Goldman Sachs, spent the two weeks following August 7, 2018 starting an extensive process to raise funding, an exercise that would be completely unnecessary if funding was "secured". 3-ER-432.

In contrast to the mass of evidence supporting the materiality of the statement "funding secured", Defendants did not present a single witness who testified that the statement "funding secured", either taken in isolation or in the context of the entire tweet, was immaterial. Defendants presented no expert witness. Instead, in their brief, Defendants largely rely on counsel argument and speculation that the statement "funding secured" was not material. None of the three pieces of evidence pointed to can be described as "substantial".

Defendants' primary argument, and the argument relied on by the District Court, was the reaction of Tesla's stock price following the August 13, 2018 blogpost. *See* Def. Br. at 52-53 and 57. Defendants never presented any testimony that this stock price reaction was statistically significant and offered no evidence to contradict Dr. Hartzmark's expert opinion, based on both qualitative and quantitative analysis, that investors and the market were still being misled by the August 7, 2018 tweets including "funding secured" after August 13, 2018. 3-ER-526-27; 3-ER-561-63.

Defendants' argument also depends on the August 13, 2018 blogpost completely disclosing every aspect of the falsity of the "funding secured" tweet, yet this is obviously not the case. As Dr. Hartzmark testified, his analysis of the implied volatility for Tesla stock options as well as ongoing discussion regarding investor support and funding for a go-private transaction after August 13, 2018 shows that investors and the market were still being misled by the August 7, 2018 tweets. 3-ER-526-27; 3-ER-561-63; 6-ER-1141-52; 4-ER-753. Further, as Professor Subramanian testified, to be a fully corrective disclosure of just the first August 7, 2018 tweet, the August 13, 2018 blogpost would have to

explicitly state that funding was not yet secured and the August 7, 2018 tweet had been untrue. 2-ER-316. The August 13, 2018 blog post quite obviously did not do this.

The market reaction to the August 13, 2018 blogpost thus provides no basis to infer that the statement "funding secured" was not materially misleading or did not impact the price of Tesla's security.

*Second*, Defendants argue that the PIF made a "serious verbal commitment" at its meeting with Musk on July 31, 2018 which was equivalent to "funding secured". Def. Br. at 51 and 57. This was essentially re-arguing the issue of falsity which the District Court rightly rejected at summary judgment. As Musk's advisors, Egon Durban of Silver Lake Partners and Dan Dees of Goldman Sachs, testified, there is a big difference between an expression of interest in a potential deal and a commitment of financing and there was never any committed financing for taking Tesla private. 3-ER-443-44; 3-ER-464. By August 23, 2018, Durban and Dees were just beginning the process of identifying and securing funding, including potential funding from PIF. 4-ER-786-87; 5-ER-954. In the context of a transaction where the price, structure, and even amount of capital needed was still

undetermined, the representation on August 7, 2018 that funding had been "secured" is materially misleading and there was no substantial evidence to the contrary.

Finally, Defendants point to the possibility that Musk could self-finance the entire go-private transaction by selling his shares in his other company: Space Exploration Technologies Corp. or SpaceX. Def. Br. at 52. Such an approach would be contrary to Musk's own disclosures on August 7, 2018 where he expressly stated that he did not intend to increase his personal ownership of Tesla or merge SpaceX and Tesla. 4-ER-735. Using SpaceX shares to finance taking Tesla private would require one of these two things. Furthermore, when Musk was asked in discovery to identify the sources of funding referred to in "funding secured"; he did not identify his SpaceX shares. 2-ER-361-75. He also did not identify SpaceX shares as a source of funding to either Durban or Dees. 5-ER-905. Thus, SpaceX is another entirely speculative and factually unsupported assertion by Musk and his counsel at trial.

### ii.     "Investor support is confirmed" is material.

The evidence regarding Musk's false statement on August 7, 2018 that "investor support is confirmed" is even more one-sided. Its significance to investors was confirmed by Joseph Fath, an asset

manager at Fidelity Investments, who testified that it told him that "Well, with the funding secured Tweet followed by this, that he had it lined up, whatever investors that may be, to support the transaction and be able to take them private. That was my, you know - - and again, I think it just reinforced the funding secured." 6-ER-1199. Similarly, Ryan Brinkman, the J. P. Morgan analyst, testified that the "investor support" tweet was a "strong statement" and an "important source" for his note as it was "completing in my mind the questions that I had" following the "funding secured" tweet. 6-ER-1115. Dr. Hartzmark testified that "Investor support is confirmed . . ." was material to reasonable Tesla investors. 3-ER-514.

The material falsity of the statement is conclusively proven by Musk's own statements. Just two weeks after publicly stating that "investor support is confirmed", a statement made without speaking to current or potential Tesla investors other than PIF, Musk described to the Tesla Board "information he had learned in recent weeks following his announcement, including but not limited to, the negative views of many of Tesla's current stockholders regarding the prospect of Tesla going private, [and] the difficulties the Company's current stockholders

would have in continuing to own Tesla's stock if the Company went private . . . ." 4-ER-785. Musk then publicly disclosed "given the feedback I've received, it's apparent the most of Tesla's existing shareholders believe we are better off as a public company…. the sentiment, in a nutshell, was 'please don't do this.'" 5-ER-1025.

In response, Defendants point to three insignificant pieces of evidence to support the immateriality of the statement "investor support is confirmed." One is a dinner attended by Musk with Larry Ellison in March 2017. 2-SER-224. Musk ultimately did not proceed with any going-private transaction in 2017 and had no discussions with Ellison regarding his August 2018 proposal. Ellison's support for going private at $420 per share was not discussed and in no way was confirmed by August 7, 2018.

Similarly, Ron Baron, a Tesla investor, sent an email on August 7, 2018 asking to be considered as part of any go-private transaction. 5-ER-1075. There is no discussion of terms and there is no evidence Musk even read the email before sending his tweet confirming investor support. In any event, Baron's support was not considered confirmed because his funds were included in the list of potential investors prepared on August

16, 2018 for Silver Lake and Goldman Sachs to contact after the tweet about potential interest in a go-private transaction. 5-ER-954. In any event, Mr. Baron's funds owned approximately 1% of Tesla in 2018 so even when combined with the Saudi PIF's 5% ownership, it still fell far short of sufficient investor support to take Tesla private. 5-ER-1036.

Finally, Defendants again point to the market reaction after the August 13, 2018 blogpost but this argument is even weaker than for the "funding secured" tweet. Dr. Hartzmark found that the August 13, 2018 blogpost confirmed Musk's August 7, 2018 misrepresentation that "investor support is confirmed". It did not act as a corrective disclosure for that statement. 3-ER-527. This is confirmed by Morningstar who connected the statement "investor support is confirmed" on August 7, 2018 with the statement in the blogpost that Musk's "best estimate right now is that approximately two-thirds of shares owned by all current investors would roll over into a private Tesla." 4-ER-776; 5-ER-1058-59. Morningstar then relied on these statements to confirm its assumption of 60% support. *Id*. As revealed by Musk ten days later, all these statements about investor support were false.

\* \* \*

34

On the materiality of both "funding secured" and "investor support is confirmed", Defendants point to exactly the "mere scintilla" of evidence that this Court has held is not enough to sustain a verdict. *Lakeside-Scott*, 556 F.3d at 802. Judgment as a matter of law is also "appropriate when the jury could have relied only on ***speculation*** to reach its verdict." *Id.* at 803 (emphasis added). Defendants' arguments that the August 7, 2018 tweets "funding secured" and "investor support is confirmed" are unmoored from the factual record and defy common sense. Plaintiff's Rule 50(b) motion for judgment as a matter of law on materiality should have been granted by the District Court.[3]

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that this Court reverse the District Court's Order and Judgment and remand for a new trial.

Dated: March 18, 2024                    Respectfully submitted,

                                         LEVI & KORSINSKY, LLP

---

[3] Judgment on the issue of materiality also requires judgment on the element of reliance as materiality was the only disputed showing required for Plaintiff to establish the presumption of reliance under *Basic*, 485 U.S. at 249.

s/ *Nicholas Porritt* .
Nicholas I. Porritt
1101 Vermont Ave NW, Suite 700
Washington, DC 20005
Tel: (202) 524-4290
Fax: (212) 363-7171

-and-

Adam M. Apton
Adam C. McCall
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
Tel: (415) 373-1671
Fax: (212) 363-7171

*Counsel for Plaintiff-Appellant and
Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that I authorized the electronic filing of the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 18, 2024. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Dated: March 18, 2024                    s/ *Nicholas Porritt*
                                         Nicholas I. Porritt

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-16010

I am the attorney or self-represented party.

**This brief contains** | 6,876 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated [              ].

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Nicholas R. Porritt | **Date** | March 18, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/22*